**Guy Benjamin NOLAN, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

Feb. 15, 1978.

Certiorari Denied by Supreme Court June 12, 1978, solely upon the basis that the Petitioner failed to comply with Rule 12.

Monte D. Curry, Asst. Public Defender, Nashville, for appellant.

Brooks McLemore, Jr., Atty. Gen., Patricia J. Cottrell, Asst. Atty. Gen., Jude Lenahan and Victor S. Johnson, III, Asst. Dist. Attys. Gen., Nashville, for appellee.

RUSSELL, Judge.

## OPINION

Guy Benjamin Nolan appeals his conviction of voluntary manslaughter and sentence to two to ten years in the State penitentiary. In his first two assignments of error Nolan claims he was denied a preliminary hearing and a polygraph test. His other assignments of error relate to the admission into evidence of a medical report and a witness' written statement, and comments made by the District Attorney General during cross-examination of a witness and during closing argument. For the reasons set forth hereinafter we overrule the assignments of error and affirm the conviction.

The appellant first claims that he was denied a preliminary hearing. The two issues associated with this claim are (1) whether it was error to overrule the defense motion to abate the indictment, and (2) if it was error, whether it was harmless error.

The trial record is not complete because the appellant did not include a transcript of the hearing on the motion to abate the indictment. The State correctly points out that the trial testimony relating the date of Nolan's arrest is not before us on this issue. See *Leek v. State,* 216 Tenn. 337, 392 S.W.2d 456 (1965); *Francis v. State,* 498 S.W.2d 107 (Tenn.Cr.App.1973).

Nevertheless, the portion of the record which we may review does show that a warrant for Nolan's arrest was issued on April 14, 1973. This arrest warrant contains the notation "O.K. for extradition R. P. McCully, ODA 5/18/'76" thus indicating that Nolan was arrested on May 18, 1976. On May 19, 1976 Nolan was indicted and on June 2, 1976 Nolan's attorney filed a timely motion to abate the indictment for the reason that Nolan was denied a preliminary hearing.

As indicated above Nolan was arrested under an arrest warrant, not on a capias pursuant to an indictment. He was therefore entitled to a preliminary hearing under the provisions of T.C.A. § 40–1131. T.C.A. § 40–1131 further provides that if an accused is indicted at any time before he has been afforded a preliminary hearing on a warrant, he may abate the indictment upon motion to the Court. Nolan was indicted before he was afforded a preliminary hearing on the warrant. It was therefore error to overrule the motion to abate the indictment. *Cf. Harris v. State*, 534 S.W.2d 868, 870 (Tenn.Cr.App.1975) (accused was indicted and no arrest warrant was issued, therefore it was not error to refuse to abate the indictment.)

Given the conclusion that it was error to overrule the motion to abate, we next consider whether the error was harmless. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In order to answer this question we must consider the criminal proceedings in this case in light of the denial of a preliminary hearing.

Many cases have stated that the only purpose of a preliminary hearing is to determine whether there is probable cause and to fix bail. *State v. D'Anna*, 506 S.W.2d 200, 203 (Tenn.Cr.App.1973); *State v. Hudson*, 487 S.W.2d 672, 674 (Tenn.Cr.App.1972). If determination of probable cause and fixing bail were the only elements of a preliminary hearing it would be difficult to establish that reversible error resulted from the denial of a preliminary hearing. Clearly probable cause was found by the grand jury which indicted Nolan.

Moreover, the jury's verdict of guilty supports the position that there was probable cause and more. However, the 1974 amendment to T.C.A. § 40–1131, which provided for the motion to abate if an accused is indicted before having a preliminary hearing, would be meaningless unless the Legislature was aware that preliminary hearings were sometimes useful to a defendant for discovery of the State's case, including material for possible impeachment of witnesses at trial. This possible defense benefit from a preliminary hearing was recognized by our Supreme Court in *McKeldin v. State*, 516 S.W.2d 82, 84–6 (Tenn.1974). It is therefore appropriate for us to review the trial record to determine whether the improper denial of a preliminary hearing, including the denial of discovery of at least the prima facie portion of the State's case necessary to establish probable cause upon a preliminary hearing amounted to reversible error.

We have carefully reviewed the record, especially the defense attorney's detailed cross-examination of witnesses. We are certain that the defense attorney was well-prepared. He brought out some discrepancies between the trial testimony of Virginia Covey, who was an eye-witness to the homicide, and her prior statements to police and others. He made further attempts to impeach her by developing a possible inconsistency between her testimony and the medical report on the bullet's path in the victim's body. Finally, the attorney called a defense witness who contradicted part of Ms. Covey's testimony. We conclude from our examining the record that the loss of a preliminary hearing with its limited opportunities for discovery did not hamper the defense in this case. It does not affirmatively appear that the error affected the result upon the trial. T.C.A. § 27–117. We hold that the error in overruling the motion to abate the indictment was harmless beyond a reasonable doubt. *Chapman v. California,* supra; *Huffman v. State*, 3 Tenn.Cr. App. 124, 458 S.W.2d 29 (1970).

In his second assignment of error the appellant argues that the denial of his

request for a State administered polygraph examination violated his right to due process and equal protection. This assignment is overruled for two reasons. First, polygraph test results are inadmissible at trial. *Grant v. State,* 213 Tenn. 440, 374 S.W.2d 391 (1964); *Hembree v. State,* 546 S.W.2d 235 (Tenn.Cr.App.1976). Thus even a nonindigent defendant cannot introduce at trial any polygraph test results. Second, an indigent defendant is not entitled to state funds to pay for a polygraph test for the purpose of aiding investigation and pretrial negotiations. *See Graham v. State,* 547 S.W.2d 531 (Tenn.1977) (an indigent does not have a constitutional right to the services of a private psychiatrist at state expense). As stated in *Ross v. Moffitt,* the Fourteenth Amendment "does not require absolute equality or precisely equal advantages". *Ross v. Moffitt,* 417 U.S. 600, 612, 94 S.Ct. 2437, 2444, 41 L.Ed.2d 341 (1974). The limited utility of polygraph test results fails to justify and mandate free polygraph tests for indigents. The appellant's second assignment of error is overruled.

■ The appellant next contends that it was error for the trial judge to admit a medical report into evidence. This report was an admissible business record. T.C.A. § 24–714. Although this evidence was cumulative the trial judge certainly did not abuse his discretion in admitting it. *Baggett v. State,* 220 Tenn. 592, 421 S.W.2d 629 (Tenn.1967).

■ In a related assignment of error, the appellant claims that it was improper to admit a witness' written statement to police. Again, the trial judge did not abuse his discretion in admitting the statement. *Baggett v. State, supra.*

■ Nolan's next assignments of error complain that the prosecutor asked the defense witness, R. B. Tidwell, whether he was aware of a charge called accessory after the fact of murder. We hold that the trial judge did not abuse his discretion in controlling the scope of cross-examination.

■ Appellant finally argues that the prosecutor's closing argument, which included two comments inappropriate to the proof in this case about a murder in "cold blood", was illegal and prejudicial. We hold that the comment, though improper in this case, was not prejudicial because the trial judge gave curative instructions, there were no other errors in the record, and the evidence against the defendant was strong. *Judge v. State,* 539 S.W.2d 340 (Tenn.Cr. App.1976).

The appellant's conviction is affirmed.

DWYER, P. J., and DAUGHTREY, J., concur.

DAUGHTREY, Judge, dissenting.

A majority of this court has determined that the trial judge improperly deprived the defendant of his right to a preliminary hearing under T.C.A. § 40–1131,[1] which, prior to its amendment in 1976, provides:

> In all criminal cases, prior to presentment and indictment, whether the charge be a misdemeanor or a felony, the accused shall be entitled to a preliminary hearing upon his request therefor, whether the grand jury of the county be in session or not.

> If the accused is indicted during the period of time in which his preliminary hearing is being continued, or at any time before accused has been afforded a preliminary hearing on a warrant, whether at his own request or that of the prosecutor, he may abate the indictment upon motion to the court. Provided, however, that no such motion for abatement shall be granted after the expiration of thirty (30) days from the date of the accused's arrest.

If this be the case, I cannot agree that the resulting error is harmless, based on the record before the Court. I find persuasive authority, discussed below, for the proposition that the denial of a preliminary hear-

---

1. In addition to the notation on the warrant noted in the majority opinion ("OK for extradition R. P. McCully, O.D.A. 5/18/76"), there was testimony at trial which established that the defendant was arrested on the day prior to the return of the indictment.

ing violates due process and is prejudicial per se. Even conceding the contrary, that the error involved here is subject to the application of the harmless error rule, I conclude that at the least the case must be remanded for further proof, under the authority of *Coleman v. Alabama*, 399 U.S. 1, 10–11, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), and *McKeldin v. State*, 516 S.W.2d 82, 86–87 (Tenn.1974).

In some jurisdictions the right to a preliminary hearing prior to indictment is grounded in the state constitution. In these states, the courts have had little difficulty in reversing and remanding, or vacating judgments of conviction following a violation of the defendant's right to a preliminary hearing. *See, e. g., State v. Jensen*, 103 Utah 478, 136 P.2d 949 (1943) (no preliminary hearing on second count of complaint; judgment reversed and case remanded); *State v. Vega*, 78 N.Mex. 525, 433 P.2d 504 (1967) (no evidence that defendant's waiver of preliminary hearing was made intelligently or competently; judgment vacated).

By contrast, the Tennessee courts have consistently held that the right to a preliminary hearing is statutory only, and not constitutional in nature. *McKeldin v. State, supra*, 516 S.W.2d at 84; *Vaughn v. State*, 557 S.W.2d 64 (Tenn.1977); *Shadden v. State*, 488 S.W.2d 54 (Tenn.Cr.App.1972), *cert. den.* 411 U.S. 909, 93 S.Ct. 1538, 36 L.Ed.2d 199 (1973). Likewise, the United States Supreme Court has never identified a federal constitutional right to a prelimi-

nary hearing. *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); *Goldsby v. United States*, 160 U.S. 70, 16 S.Ct. 216, 40 L.Ed. 343 (1895). Nevertheless, the *Coleman* court did hold that where it is provided for by state statute, a preliminary hearing is a "critical stage" of a criminal proceeding for purposes of the Sixth Amendment right to counsel. 399 U.S. at 9–10, 90 S.Ct. 1999. And this ruling was later echoed by the Tennessee Supreme Court's decision in *McKeldin, supra*, in which the court held that the preliminary hearing envisioned by T.C.A. § 40–1131 "is a 'pretrial type of arraignment where certain rights may be sacrificed or lost,'" as defined in *Coleman*, and that it therefore constitutes "a critical stage in a criminal prosecution in Tennessee." 516 S.W.2d at 85, 86.

If we acknowledge the preliminary hearing to be a "critical stage" of the proceedings, I do not understand how the deprivation of one's right to a preliminary hearing can ever be viewed as "harmless error." Indeed, it seems clear to me that failure to provide the defendant with a hearing at a critical stage of the proceedings is a violation of due process so serious as to constitute prejudice per se. This conclusion is supported by substantial authority from other jurisdictions.[2]

The courts in some states have held the preliminary hearing to be jurisdictional in nature. *See, e. g., People v. Bomar*, 73 Cal.App. 372, 238 P. 758 (1925).[3] Thus in *State v. Wheeler*, 259 S.C. 571, 193 S.E.2d

---

2. I can find no case directly in point, i. e. no case in which a defendant, in the absence of a waiver and despite a timely request and a timely objection, was flatly denied the right to a preliminary hearing. This undoubtedly results from the fact that where a statutorily mandated preliminary hearing is not afforded a criminal defendant, the accused is either discharged or the issue is subsequently "mooted" by the return of an indictment, which cuts off the defendant's right to a preliminary hearing in other jurisdictions, including the federal system. Tennessee's statute, permitting as it does post-indictment preliminary hearings, is apparently unique. Thus, the issue we face here—the effect of a denial of a preliminary hearing—usually arises in the context of a faulty hearing, or a faulty waiver of the right to a hearing.

3. There are at least two reported cases which purport to hold that the absence of a preliminary hearing is not a jurisdictional defect. Both cases, *Douglas v. Maxwell*, 175 Ohio 317, 194 N.E.2d 576 (1963), and *Cline v. Smith*, 229 Ga. 190, 190 S.E.2d 51 (1972), were habeas corpus proceedings, and both opinions are exceedingly brief. In its pertinent part the *Cline* opinion says: "The trial judge did not err in holding that the absence of a commitment hearing does not divest a criminal court of jurisdiction, and that an accused may waive his right to commitment hearing. The Court properly found that none of appellant's Constitutional rights had been denied him . . . ." 190 S.E.2d at 51–2 (citations omitted).

515 (1972), the South Carolina Supreme Court said that "[f]ailure to conduct [a preliminary hearing], properly demanded, deprives the Court of General Sessions of jurisdiction to indict or try the defendant," because, by implication, criminal defendants would be "denied due process of law by reason of the fact that they were not afforded a preliminary hearing" as contemplated by State statute.[4] 193 S.E.2d at 518. Denial of a preliminary hearing has also been held to violate due process by the Arizona Supreme Court. See State v. Essman, 98 Ariz. 228, 403 P.2d 540, 543 (1965), in which the court held that "[d]ue process of law requires that an accused must be given a full [preliminary] hearing . . ."

Other courts, while not explicitly grounding their result on a due process basis, have labelled the statutory right to a preliminary hearing as "fundamental," Davis v. State, 121 Neb. 399, 237 N.W. 297, 298 (1931), "substantial," State v. Trow, 49 S.D. 485, 207 N.W. 466 (1926), and "valuable," Manor v. State, 221 Ga. 866, 148 S.E.2d 305, 307 (1966). In Manor, supra, the Georgia Supreme Court held that the defendant had been improperly denied his statutory right to a preliminary hearing, and said:

> The defendant was represented by able counsel . . . and the record makes it crystal clear that the able trial judge made every effort possible to give the defendant a fair and impartial trial; but this did not erase the error and the harm done to the defendant prior to the time he reached the [trial] court.
>
> All the proceedings in this case beginning with the commitment hearing and including indictment, trial, verdict and sentence of the court are nugatory and are hereby declared null and void.

148 S.E.2d at 308. The Manor court quashed the indictment, set aside the judgment of conviction, and declared that the defendant "must be given a commitment hearing, if he desires such, and the case

may then proceed through the processes of law bringing him to trial by indictment of a grand jury." Id.

In an earlier case, the Kansas Supreme Court noted that the preliminary hearing "is a fundamental and basic right, it is substantial, and certainly if [the defendant] is deprived of it, he is prejudiced." State v. Howland, 153 Kan. 352, 110 P.2d 801, 808 (1941). The Howland court declared the defendant's conviction a nullity and, in reversing the judgment, said:

> The enforcement of the criminal laws is important, but in their enforcement it is always to be remembered that it is just as important that the state follow the statutory provision for [the defendant's] prosecution, as that [the defendant] follow the law for which he is being prosecuted.
>
> . . . To take away from him the benefits and protection which the criminal code grants him is to deprive him of his rights and privileges guaranteed to him under our system of government and should not be tolerated.

110 P.2d at 808, 809.

My research has not turned up a single case in which the harmless error rule has been applied to the failure to provide a preliminary hearing. Indeed, the authorities I have found are in agreement that the right involved is so substantial that its denial requires retrial. I conclude that the defendant in this case has been deprived of a fundamental right which can only be remedied by a reversal of his conviction.

It is true that in the case of inadequate representation at the preliminary hearing both the United States Supreme Court and the Tennessee Supreme Court have acknowledged the possibility that the resulting error might be harmless. Coleman v. Alabama, supra, 399 U.S. at 11, 90 S.Ct. 1999; McKeldin v. State, supra, 516 S.W.2d at 87. However, in both Coleman and McKeldin, the courts concluded that this issue could not be determined without a remand.

---

4. The Wheeler court found that the defendants had been afforded a preliminary hearing, despite their failure to request one in writing, as required by South Carolina law. 193 S.E.2d at 518.

In discussing the nature and function of the preliminary hearing, Mr. Justice Henry, writing for a unanimous court in *McKeldin*, noted that "the failure to exploit this golden opportunity to observe the manner, demeanor and appearance of the witnesses for the prosecution, to learn the precise details of the prosecution's case, and to engage in that happy event sometimes known as a 'fishing expedition,' would be an inexcusable dereliction of duty [on the part of the defendant's attorney], in the majority of cases." 516 S.W.2d at 85–6. The court in *McKeldin* further concluded that once lost, the "advantages of the preliminary hearing may not be effectively restored." *Id.* at 86.

As noted in the majority opinion in this case, subsequent to the opinion in *McKeldin* the discovery function of the Tennessee preliminary hearing was recognized by the legislature and codified in the second paragraph of T.C.A. § 40–1131, set out above. Acts 1974, ch. 701, § 1. The majority bases its result on a conclusion that the lack of a preliminary hearing "with its limited opportunities for discovery did not hamper the defense in this case," noting that the defense attorney was "well-prepared" and that he was able to bring out some discrepancies in the State's case upon cross-examination of the key prosecution witness. What we cannot tell from the trial transcript is how much better prepared the defense attorney might have been had he

been given the benefit of learning "the precise details of the prosecution's case" in advance of trial. We know that he was able to exploit an inconsistency between the eyewitness's original statement to police and her testimony at trial. Given the three year lapse between the commission of the offense and the filing of the plea in abatement, and the nine month interval between entry of the trial court's order overruling the plea and the actual trial, there is the distinct possibility that the eyewitness's credibility might have been even more seriously impeached, had she been subject to preliminary cross-examination.[5]

Assuming that the error in this case *could* be considered harmless, I do not believe such a determination can be made without a remand for the purposes outlined in *McKeldin v. State, supra*, 516 S.W.2d at 87. It thus appears that a *McKeldin* remand is the very least relief to which this defendant is entitled. But I would go farther and reverse the judgment for failure to afford the defendant due process of law. For this reason, I am unable to concur in the result reached by the majority.

---

**5.** In addition to discovery and "perpetuation" of testimony for future impeachment purposes, other potential functions of a preliminary hearing may have been denied the defendant here, including the opportunity for gaining reduction of bail and the occasion for the initiation of plea bargaining. *See generally* Y. Kamisar, *Modern Criminal Procedure* 960–6 (4th ed. 1974).